IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| COMANCHE NATION, a federally recognized Indian Tribe and NUMUNU PAHMU, a Limited Liability Company,<br><br>  Plaintiffs,<br><br>v.<br><br>GOVERNOR MARY FALLIN and THE STATE OF OKLAHOMA,<br><br>  Defendants. | Case No. CIV-13-1228-C |

## PLAINTIFFS' COMPLAINT AND APPLICATION TO CONFIRM ARBITRATION AWARD

Plaintiffs, the Comanche Nation and Numunu Pahmu, LLC, (collectively "Plaintiffs"), pursuant to 9 U.S.C. § 9, respectfully petition this Court for an Order of Judgment confirming the November 18, 2013 interim emergency award of the American Arbitration Association ("AAA") Arbitrator Patrick Irvine (hereafter "Arbitration Order," Exhibit 1 hereto).  The Arbitration Order grants Plaintiffs emergency injunctive relief in *Comanche Nation, Numunu Pahmu, LLC, & Tobacco Retailers Licensed by the Comanche Nation Tax Commission v. Governor Mary Fallin & State of Oklahoma*, No. 71-181-639-13, American Arbitration Association.  In support of this application and petition, Plaintiffs state as follows:

**Parties**

1. Plaintiff the Comanche Nation is a federally recognized Indian and sovereign tribal government with jurisdictional interests and territory throughout Southwestern Oklahoma. Plaintiff maintains its capital complex near Lawton, Oklahoma.

2. Plaintiff Numunu Pahmu is a Limited Liability Company chartered under Comanche Nation law, wholly owned and operated by the Comanche Nation, with offices in Lawton, Oklahoma. It is organized for the purpose of tobacco and other sales to provide employment opportunities for Comanche Nation citizens, as well as other Native Americans, and to provide government revenue for essential government purposes.

3. Defendant Governor Mary Fallin is the elected executive branch representative of the State of Oklahoma with an office in the capital complex within Oklahoma City.

4. Defendant the State of Oklahoma ("State") is a state government with its capital complex in Oklahoma City.

**Jurisdiction and Venue**

5. This Court's jurisdiction is based on 9 U.S.C. § 9 and the parties' arbitration agreement, set forth in ¶ 18(b) of an October 31, 2013 Compact attached hereto as Exhibit 2, and discussed in allegations below. The Comanche Nation adopted the October 31, 2013 Compact pursuant to a "most favored nations" clause within its own prior compact (dated June 26, 2008)

between itself and the State, which expressly provides that once such option is exercised the new compact's terms supersede those of the original compact.

6. Venue is proper under 9 U.S.C. § 9 and 28 U.S.C. § 1391(a). The arbitration award at issue was rendered in Oklahoma City, Oklahoma, and the parties' arbitration agreement provides that "any arbitral award issued pursuant to proceedings initiated under this section will be enforceable in a court of proper jurisdiction, for which purposes both consent to suit in federal district court having proper venue . . . ." *See* Ex. 2 ¶ 18(b).

7. Each party has waived immunity for the limited purpose of enforcing the provisions of the governing Compact. *See* Ex. 2 ¶ 18(c). The parties have further agreed "not to assert, directly or indirectly, any immunity to any action filed in accord with . . . ¶ 18 and agree[d] . . . not to raise the Eleventh Amendment to the United States Constitution or comparable defense to the validity of such waiver." *See* Ex. 2 ¶ 18(d).

**Underlying Facts**

8. The Comanche Nation and the State entered into a Tobacco Tax Compact on June 26, 2008 ("Original Compact"). The compact allows the Nation and its licensed retailers to sell cigarettes and other tobacco products at a reduced state sales tax rate, with both parties sharing the revenue generated from the tax.

9. The Original Compact initially prescribed it was to terminate on June 30, 2013 if either party gave the other written notice of intent not to renew it for

3

an additional 5-year term. The State gave such notice, however, the parties thereafter entered into two written extensions of the term of the Original Compact (on June 28, 2013 and October 1, 2013) which extended its term through October 31, 2013.

10. The parties negotiated throughout the late spring, summer, and part of the fall of 2013 regarding a Tobacco Compact with new terms. The Comanche Nation negotiated in good faith throughout the time period. The State represented that it had provided the Comanche Nation with the most favorable terms possible; however, on the eve of expiration of the Compact, the Comanche Nation learned the State had provided more favorable terms to several other Indian Nations, including the Chickasaw Nation, to the exclusion of the Comanche Nation. The State refused to extend the Original Compact further to allow the parties to meet and further negotiate similar terms.

11. The Original Compact provided that should another Indian Tribe become entitled to more favorable terms for the sales of tobacco by virtue of the execution of a new compact, the Nation, upon written notice to the State, could adopt such compact and all of its terms, which would supersede those of the Original Compact. Therefore, on October 31, 2013, the Comanche Nation wrote the State invoking this "most favored nations" provision to adopt the more favorable Tax Compact between the Chickasaw Nation and the State of Oklahoma dated October 31, 2013 (sometimes "Superseding Compact"). The

Superseding Compact terminates on December 31, 2023. Thus until December 31, 2023, the parties' relationship is governed by that Compact.

12. The Superseding Compact contains an arbitration clause providing that either party may seek arbitration of a dispute in relation to the Compact, "which arbitration shall proceed in accord with rules that substantially comport with the rules of the American Arbitration Association." *See* Ex. 2, ¶ 18(b). Remedies available through arbitration include injunctive and/or declaratory relief for the enforcement of the provisions of the Compact. *Id.*

13. The State expressly repudiated its obligation to perform under the Superseding Compact and then promptly began breaching it. The State allocated to the Nation and its retailers "black stamps" pursuant to 68 O.S. §349.1, a statute which subjects sales of cigarettes and other tobacco products by retailers licensed by <u>non</u>-compacting federally recognized tribes to the State's full state excise tax rate. 68 O.S. §349.1(A). The State treated the Nation as a non-compacting tribe pursuant to Okla. Stat. tit. 68, § 349.1(B)(2); non-compacting tribes are given a limited number of excise tax free or "black stamps" to distribute to retailers for the sale of tobacco on Indian land to tribal citizens tax free. *Id.*

14. The Nation's sales of tobacco products pursuant to compact bring hundreds of thousands of dollars in revenue to the Nation to fund essential governmental and social service programs for its members. The Nation's compact for division of tax revenues with the State at a reduced tax rate allows

5

small, tribal tobacco retailers to compete with larger chains. Absent interim relief, the economic viability of the Nation's tobacco retailers will be threatened or destroyed, and vital social services will go unfunded due to the lack of tax revenue. Absent immediate relief, the regular customers of the Nation's retailers will go elsewhere and the retailers will irreparably lose their customer base to competitors.

15. In accordance with the arbitration clause, Plaintiffs filed a demand for arbitration with the American Arbitration Association in Oklahoma City, Oklahoma, on November 11, 2013 and moved for Emergency Injunctive Relief pursuant to the governing AAA Rules for Commercial Arbitration.

16. On November 18, 2013, the arbitrator entered an Award granting Plaintiffs' Motion for Emergency Injunctive Relief and prohibiting the State from refusing to recognize and perform under the Superseding Compact, and from applying its tax laws pertaining to non-compacting tribes pending resolution of the parties' controversy. *See* Ex. 1, the Arbitrator's Award.

17. In ¶ 18(b) of the Amended Compact, the parties agreed that "*any* arbitral award issued pursuant to proceedings initiated under th[e] section [would] be enforceable in a court of proper jurisdiction" and both consented to suit in federal district court for such purposes.

18. The Federal Arbitration Act, 9 U.S.C. § 9, provides that if the parties have agreed for the court to enter judgment upon an award made pursuant to arbitration, any party may apply to the court for an order confirming the award.

Upon such application the Court "must grant such an award unless the award is vacated, modified, or corrected" for any of the narrow reasons prescribed within the Act.  9 U.S.C. § 9.  Here, there are no grounds to correct, vacate or modify the Award under 9 U.S.C. §§ 10 or 11.

19.     Interim arbitration awards, in addition to final awards, are eligible for confirmation when they "'finally and definitively dispose[] of . . . separate independent claim[s]." *Blue Cross Blue Shield of Mich. v. Medimpact Healthcare Sys., Inc.*, No. 09-14260, 2010 WL 2595340, at *2 (E.D. Mich. June 24, 2010) (quoting *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir.1984), abrogated on other grounds by *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000)). Courts have found that an arbitrator ruling granting interim injunctive relief in instances like the present "qualif[y] as one that finally and definitely disposes of a separate independent claim" and are thus subject to confirmation.  *Id.*; *see also Island Creek Coal Sales Co.*, 729 F.2d at 1049 (affirming district court's observation that "[t]he interim award disposes of one self-contained issue, namely, whether [a party] is required to perform the contract during the pendency of the arbitration proceedings. Th[is] issue is a separate, discrete, independent, severable issue." *Island Creek*, 729 F.2d at 1049 (internal quotation marks omitted).

20.     Furthermore, a district court's powers  to review an arbitration award are "extremely limited," *Dominion Video Satellite, Inc. v. Echostar Satellite,*

*L.L.C.*, 430 F.3d 1269, 1275 (10th Cir. 2005), and have been described as "'among the narrowest known to law.'" *Conoco, Inc. v. Oil, Chem. & Atomic Workers Int'l Union*, 26 F.Supp.2d 1310, 1315 (N.D. Okla. 1998) (quoting *Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.*, 119 F.3d 847, 849 (10th Cir. 1997)). The rationale for restricting judicial review is that parties agree to arbitrate for the very purpose of avoiding the delay and expense of court proceedings. *See Dominion Video*, 430 F.3d at 1278; *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001); *Conoco, Inc.*, 26 F.Supp.2d at 1315. "'A court may only vacate an arbitration award for reasons enumerated under the Federal Arbitration Act, 9 U.S.C. § 10, or for a handful of judicially created reasons.... Outside of these limited circumstances, an arbitration award must be confirmed.'" *Conoco, Inc.*, 26 F.Supp.2d at 1315, quoting *Denver & Rio Grande Western Railroad Co.*, 119 F.3d at 849.

21.  In this instance, the arbitrator found it necessary, based on the risk of irreparable injury to Plaintiffs and little, if any, corresponding harm to the State, to enter an injunction pending resolution of the dispute. No reason for delay in confirming the arbitrator's award exists, and Plaintiffs therefore ask that the Court enter an order confirming that award.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court confirm the Award of Emergency Injunctive Relief issued by the arbitrator and enter judgment in conformity with the Award.

Dated this 19th day of November, 2013.

      Respectfully submitted,

s/Mike McBride
D. Michael McBride III, OBA #15431

- Of the Firm –

**CROWE & DUNLEVY**
A Professional Corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma 74103-3313
(918) 592-9821
(918) 599-6317 (Facsimile)
mike.mcbride@crowedunlevy.com

-AND-

Jimmy K. Goodman, OBA #3451
Harvey D. Ellis, OBA #2694
Paige A. Masters, OBA #31142

- Of the Firm -

**CROWE & DUNLEVY**
A Professional Corporation
20 North Broadway, Suite 1800
Oklahoma City, Oklahoma 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
jimmy.goodman@crowedunlevy.com
harvey.ellis@crowedunlevy.com
paige.masters @crowedunlevy.com

**LAWYERS FOR PLAINTIFFS COMANCHE NATION and NUMUNU PAHMU, LLC**